UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREADSTONE CAPITAL
MANAGEMENT, L.P.,

    Plaintiff/Counter-Defendant,

v

TBTW HOLDINGS,

    Defendant/Counter-Claimant.
_____/

Case No. 1:09-cv-1099

HON. JANET T. NEFF

## OPINION

Pending before the Court in this removed action is plaintiff's motion to remand (Dkt 8). Defendant filed a response in opposition (Dkt 10). For the reasons that follow, this Court finds that defendant improvidently removed this matter to this Court and therefore grants plaintiff's request to remand the matter to state court.

### I. BACKGROUND

This action, alleging state law claims of breach of guaranty and judicial foreclosure, originated in the Montcalm County Circuit Court of Michigan. Defendant removed the case to this Court, claiming diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff argues that this Court lacks subject matter jurisdiction to hear this case because diversity jurisdiction does not exist.

Plaintiff's motion to remand is brought pursuant to 28 U.S.C. § 1447(c), which provides in relevant part: "If at any time before final judgment it appears that the district court lacks subject

1

matter jurisdiction, the case shall be remanded." Removal statutes are to be strictly construed, and "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999). The burden of proving the existence of jurisdiction falls on the defendant seeking removal. *Id.* at 492-93.

Any case that could have been brought in federal court based on diversity jurisdiction can be removed from state court on this ground. 28 U.S.C. § 1441(a). Under the diversity statute, 28 U.S.C. § 1332, this Court has original jurisdiction of a civil action where the matter is between "citizens of different states" and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

"The general rule is that all unincorporated entities ... have the citizenship of each partner or member." *Delay v. Rosenthal Collins Group, LLC,* 585 F.3d 1003, 1005 (6th Cir. 2009). And because each partner or member may itself have multiple members or partners – and thus may itself have multiple citizenships – the federal court needs to also know the citizenship of each "sub-member" or "sub-partner" to determine whether complete diversity exists between the parties opposed in interest. *Id.* "[W]here the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued in [the federal] courts." *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267; 2 L.Ed 435 (1806).

Here, defendant TBTW Holdings is a Pennsylvania general partnership. Defendant has two general partners: Thomas Brubaker, a citizen and resident of the State of Pennsylvania; and Thomas Walton, a citizen and resident of the State of Florida.

Plaintiff Treadstone is a Delaware limited partnership. Plaintiff's general partner is Treadstone Capital Partners, LLC, a Delaware limited liability company, whose principal place of

business is in the State of Texas. In its motion to remand, plaintiff identifies its limited partner as PCG Special Situations Partners, also a Delaware limited partnership (Mot. 4). Plaintiff further indicates that one of PCG Special Situation Partners' limited partners is the Florida State Board of Administration (SBA), "an agency of the Florida state government." Tencic Aff. [Pl. Mot. Exh. 1], ¶¶ 2-4.

At issue is the citizenship of the SBA, plaintiff's "sub-partner." Plaintiff argues that the SBA is a citizen of Florida (a political subdivision) and that its citizenship defeats complete diversity jurisdiction in this case because Walton is also a citizen of Florida. Defendant argues that the SBA is instead an arm or alter-ego of the state and that the SBA therefore cannot be considered a citizen of Florida. Defendant concludes that its claimed diversity jurisdiction in this Court is not defeated by the SBA's presence. The Court agrees with defendant's analysis that the SBA is an arm or alter-ego of the State of Florida, but not defendant's conclusion that diversity jurisdiction is available. This Court instead concludes that because the SBA has no citizenship, defendant has not established that the removed matter is between "citizens of different states."

## II. ANALYSIS

A state is not a "citizen of a state" for purposes of diversity jurisdiction. *Moor v. Alameda County,* 411 U.S. 693, 717 (1973). In contrast, "a political subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the State for diversity purposes." *Id. See also South Carolina Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.,* 535 F.3d 300 (4th Cir. 2008); *Mich. Dep't of Transp. v. Allstate Painting & Contracting, Co.,* No. 2:08-cv-286, 2009 WL 891702 at *2 (W.D. Mich. March 31, 2009).

A. *Ernst* Factors

Courts generally look to Eleventh Amendment immunity principles for guidance in determining whether a particular public entity is a citizen for purposes of diversity jurisdiction. The Sixth Circuit Court of Appeals, drawing from the Supreme Court's analysis in *Hess v. Port Authority Trans-Hudson Corp.,* 513 U.S. 30, 44-51 (1994), examines four factors in deciding whether an entity is an "arm of the state," on the one hand, or a "political subdivision," on the other. *Ernst v. Rising (en banc),* 427 F.3d 351, 359 (6th Cir. 2005) (concluding that a government retirement system that provides benefits for all state judges and many other state officials is "most naturally characterized as an arm of the State"). The four *Ernst* factors are "(1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding." *Id.*

1. *Florida's Potential Liability*

This first factor, "the question of who pays a damage judgment against a[ ] [public] entity," is often characterized as the most important factor in the analysis. *Alkire v. Irving,* 330 F.3d 802, 811 (6th Cir. 2003). However, as defendant points out, the cases in which this inquiry typically arises involve public entities that are parties to the action and are potentially liable for a judgment (Resp. 6). Here, the SBA is not a named party, but plaintiff's sub-partner. It is unclear whether the State of Florida may be exposed to any liability in relation to a judgment against plaintiff. Therefore, this factor does not tip the balance in either direction for purposes of determining jurisdiction.

2. *How Florida Law Defines the SBA*

In contrast, the language by which Florida state statutes refer to the SBA and the degree of control by the State of Florida over the SBA's actions strongly supports the conclusion that the SBA is an arm of the state. The SBA is a product of Florida law, and its functions are dictated by Florida law. The SBA was established pursuant to Article IX, § 16 of the Florida Constitution of 1885. Florida law provides that the SBA "shall invest all the funds in the System Trust Fund ... and all other funds specifically required by law to be invested by the board ... to the fullest extent that is consistent with the cash requirements, trust agreement, and investment objectives of the fund." FLA. STAT. ANN. § 215.44(1). The SBA's statutory duty is to see that moneys invested are "at all times handled in the best interests of the state." *Id.* § 215.44(2)(b). Florida law provides the SBA with the power and authority to make reasonable rules and regulations necessary to carry out the specified statutory provisions. *Id.* § 215.52.

Similarly, the language by which state courts refer to the SBA and the degree of state control over the entity's actions supports the conclusion that the SBA is an arm of the State of Florida. *See Hicks v. Florida State Bd. of Admin.,* 594 S.E.2d 745, 746 (Ga. Ct. App. 2004) ("The Board is a Florida public authority that was created and organized under Florida law to discharge the public responsibility of administering the Florida Retirement System Trust Fund."); *Florida State Bd. of Admin. v. Alliance Capital Mgmt., L.P.,* 2003 WL 22719563, *2 (Fla. Cir. Ct. 2003) ("The plaintiff has not filed this suit as a private individual or in an essentially private capacity, but in its official capacity as a state agency carrying out one of its statutory purposes.").

3. *The Degree of Control Florida Maintains over the SBA*

Likewise, the third *Ernst* factor strongly suggests that the SBA is an arm of the State of Florida. The SBA is composed of the state governor as chair, the state's chief financial officer, and the state attorney general, FLA. STAT. ANN. § 215.44(1), although the SBA may retain investment advisers or managers, or both, external to in-house staff, to assist the board in carrying out its power to make purchases, sales, exchanges, investments, and reinvestments for and on behalf of the funds referred to it, *id.* § 215.44(2)(b). Florida law provides that "[t]he appointment of the executive director of the State Board of Administration shall be subject to the approval by a majority vote of the Board of Trustees of the State Board of Administration, and the Governor must vote on the prevailing side." FLA. STAT. ANN. § 215.441.

Florida law also provides for a six-member Investment Advisory Council to review the investments made by the staff of the Board of Administration and to make recommendations to the board regarding investment policy, strategy, and procedures. FLA. STAT. ANN. § 215.444(1). The members of the council are appointed by the board, subject to confirmation by the Florida state senate. *Id.* § 215.444(2). Last, the SBA is required to annually submit to the Florida legislature detailed reports pertaining to each fund entrusted to it for investment. *Id.* § 215.44(5). Hence, the degree of control the State of Florida maintains over the membership and operations of the SBA clearly supports the conclusion that the SBA is an arm of the state.

4. *The Source of the SBA's Funding*

Last, the moneys invested by the SBA are moneys transferred to it by virtue of state law. FLA. STAT. ANN. § 215.49 provides that "[i]t shall be the duty of each state agency, and the judicial

6

branch, now or hereafter charged with the administration of the System Trust Fund ... or other funds specifically required by law to be invested by the State Board of Administration ... to make such moneys available for investment as fully as is consistent with the cash requirements of the particular fund and to transfer such moneys to the board for investment." This last *Ernst* factor also indicates that the SBA is not fiscally independent but operates as an instrument of the State of Florida.

Based on the totality of the *Ernst* factors, this Court concludes that the SBA is an arm or an alter ego of the State of Florida, not a political subdivision.

### B. Import to Jurisdictional Inquiry

Defendant argues that if this Court determines that plaintiff's sub-partner, the SBA, is an arm or alter-ego of the state and therefore not a "citizen," then this Court should conclude that the SBA's presence does not defeat its claimed diversity jurisdiction. Defendant essentially argues that inclusion of the SBA, a "stateless" entity, does nothing to change the diversity equation. However, defendant misses the import of its position that the SBA is an alter-ego of the State of Florida.

Under the diversity statute, 28 U.S.C. § 1332, this Court would have original jurisdiction of this matter if it were between "citizens of different states." Because a state is not a "citizen of a state," *Moor,* 411 U.S. at 717, "it is well settled that a suit between a state and a citizen or a corporation of another state is not [a suit] between citizens of different states, and that the ... court of the United States has no jurisdiction of it, unless it arises under the constitution, laws, or treaties of the United States." *Postal Tel. Cable Co. v. Alabama,* 155 U.S. 482, 487 (1894). Likewise, a suit between the alter ego of a state and a citizen of another state is not a suit between citizens of different states. "[I]f a party is deemed to be 'an arm or alter ego of the State,' then diversity jurisdiction must fail." *Univ. of S. Alabama v. Am. Tobacco Co.,* 168 F.3d 405, 412 (11th Cir.

1999). *See also Tradigrain, Inc. v. Mississippi State Port Auth.,* 701 F.2d 1131, 1132 (5th Cir. 1983) ("If suit is brought against an agency which is merely an alter ego of the state, it follows that federal jurisdiction is also lacking.").

For example, in *Mich. Dep't of Transp. v. Allstate Painting & Contracting, Co.,* No. 2:08-cv-286, 2009 WL 891702 at *2 (W.D. Mich. March 31, 2009), this Court held that the Michigan Department of Transportation (MDOT) was an alter ego of the State of Michigan and therefore had no citizenship establishing diversity jurisdiction. Thus, this Court granted the MDOT's motion to remand the breach of contract action the MDOT brought against the defendant painting company. *See also Morongo Band of Mission Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1381-82 (9th Cir. 1988) (holding that jurisdiction was unavailable under the Federal Interpleader Act, 28 U.S.C. § 1335, where that section requires that two or more of the adverse claimants to the interpleaded funds be "of diverse citizenship," and the California State Board of Equalization is a state agency without "citizenship").

Under *Delay,* 585 F.3d at 1005, which requires this Court to examine the citizenship of each "sub-member" or "sub-partner" in making its jurisdictional inquiry, a different result is not permitted in this case. The determination that plaintiff's sub-partner is an alter ego of the State of Florida and not a "citizen" competent to sue or liable to be sued in federal court makes this forum unavailable to defendant under its claimed statement of jurisdiction. Plaintiff and defendant (composed of their partners and sub-partners) are not "citizens of different states" under 28 U.S.C. § 1332. This Court is therefore compelled to remand this matter to the state court from which defendant removed it. 28 U.S.C. § 1447(c). However, in its discretion, the Court declines to grant plaintiff's concomitant request for attorney fees and costs.

8

## III. CONCLUSION

Plaintiff's Motion to Remand, with the exception of its concomitant request for attorney fees and costs, is GRANTED. An Order consistent with this Opinion will issue.


Date: March 18, 2010　　　　　　　　　　　　　/s/ Janet T. Neff
　　　　　　　　　　　　　　　　　　　　　　　JANET T. NEFF
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

9